SAN FRANCISCO–OKLAHOMA PE-
TROLEUM EXPLORATION
CORPORATION, Plaintiff-Appellee,

v.

CARSTAN OIL COMPANY, INC. and
Courtney G. Rogers,
Defendants-Appellants.

William R. Rogers, Defendant.

SAN FRANCISCO–OKLAHOMA PE-
TROLEUM EXPLORATION
CORPORATION, Plaintiff-Appellant,

v.

CARSTAN OIL COMPANY, INC., Court-
ney G. Rogers, and William R.
Rogers, Defendants-Appellees.

Nos. 83–1230, 84–1228.

United States Court of Appeals,
Tenth Circuit.

June 21, 1985.

James C. Lang of Sneed, Lang, Adams, Hamilton, Downie & Barnett, Tulsa, Okl. (Melinda J. Martin, Tulsa, Okl., with him on the brief), for plaintiff/appellee/appellant.

Before BARRETT and SETH, Circuit Judges, and BURCIAGA, District Judge *.

PER CURIAM.

This was an action seeking rescission of a purchase of an undivided working interest in a producing oil well and for reimbursement. The defendants were Courtney Rogers, William Rogers, and Carstan Oil Company. The complaint alleged violations of state and federal securities laws. The basic questions on appeal are whether the interest was a "security" under the Securities Act of 1933 and whether the only remaining defendant, William Rogers, was a "controlling" person under Section 77*o* of the Act with the requisite knowledge to be held liable as would be the corporate defendant.

The trial court entered summary judgments against Courtney Rogers and the corporation. Both these defendants have been discharged in bankruptcy. The trial court as to defendant William Rogers (who was not involved in the bankruptcy) decided that he was a "controlling person" under Section 77 *o*, but he did not have sufficient knowledge of the facts to be liable. William Rogers is the only defendant involved in the appeals.

According to the record the corporate defendant was organized for the purpose of selling undivided interests in oil properties. William Rogers provided the money to organize the company, he was a director and the sole stockholder. His son, Courtney Rogers, was the active party in the company, but the record shows that he was having trouble with creditors and hence had his father appear as the owner and a director. The son's name was not used although he was running the company.

---

Robert M. Beachy of Van Osdol, Magruder, Erickson and Redmond, Kansas City, Mo., for defendants/appellants/appellees.

* Honorable Juan G. Burciaga, United States District Judge for the District of New Mexico, sitting by designation.

The company put advertisements in newspapers in several states offering for sale undivided working interests in a producing well in Kansas to be operated by the corporation. The interests were not registered under the Securities Act of 1933 or in any other way.

As mentioned, the trial court determined that William Rogers was a "controlling person" under 15 U.S.C. § 77o who could be held liable for violations of the Act as would be the corporation if he had the required knowledge. Section 77o provides in part:

"Every person, who, by or through stock ownership, agency, or otherwise, ... controls any person liable under sections 77k or 77l ..., shall also be liable ... unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist."

17 C.F.R. 230.405 provided as to "control": "The term 'control' ... means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."

As mentioned, William Rogers assisted in organizing the corporation. He was a director and was the sole stockholder at the time the advertisements appeared. This was shown by a tax report submitted for the corporation. He signed the corporate minutes and reports and appeared to be, and occupied the position, of one in charge. The proof showed that he was a "controlling person" as defined in the Regulations and as the term was used in the Act. We thus agree with the trial court on this point.

■ Liability would attach to the corporation in these circumstances if there had been no registration of the "securities", if the transactions were accomplished by the use of the mails or an instrumentality of interstate commerce. These facts were established in the trial court proceedings as to the corporation. Since Mr. Rogers was a "controlling person" under Section 77o he would be also liable "unless [he] had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist." The trial court determined that William Rogers did not have such knowledge or reasonable ground and so found him not liable under the Act. The position taken by the trial court, in our view, is contrary to the record. As mentioned, appellee Rogers knew the purpose for which the corporation was organized and he participated therein. He knew of sales of the interests by mail and bought one himself. He received no prospectus. He also apparently received other interests for his assistance in organizing the corporation. He had acquaintances who had bought shares as he did. He was experienced in making investments in corporations and had received prospectuses in other investments. His actual knowledge of the transactions and how they were handled was significant. The Act says "no knowledge of ... the existence of the facts" is necessary to escape liability.

To this actual knowledge we may add the elements which could constitute the reasonable ground to believe "the facts." Thus he was a director and the sole stockholder. As a director he certainly had the duty to know the basic or sole function for the corporation—the sale of undivided interests—and how this was being carried out—by mail—and whether this was in accordance with the basic statutory requirements. He signed the minutes of the corporate meetings and thus must have known from that source the lack of registration.

It appears that when the corporate violation was established, and when this defendant was shown to be a controlling person, plaintiff had established a prima facie case, *Swenson v. Engelstad,* 626 F.2d 421 (5th Cir.). The defendant had the burden to demonstrate the exception to Section 77 o —a lack of knowledge. (There is no private offering issue.) This he attempted to do by taking the position that he was a figurehead; that his name was used be-

cause his son could not use his, he did not participate in any way; and that he had made no effort to learn what the corporation was doing. When reliance is placed on his testimony it demonstrates that he must have made a conscious effort not to know. This established that he had not performed his duties as a director. He had the opportunity to know as there is no hint whatever that this is a case where a director or officer made an effort to find out and was unable to find the facts or was prevented from doing so.

■ We do not need to decide whether his position as a director and as the sole stockholder was enough to demonstrate control. It seems apparent that he had the authority and the power to control although he may not have sought to exercise the power. *See G.A. Thompson & Co., Inc. v. Partridge,* 636 F.2d 945 (5th Cir.); *Carpenter v. Harris, Upham & Co., Inc.,* 594 F.2d 388 (4th Cir.); *Lanza v. Drexel & Co.,* 479 F.2d 1277 (2d Cir.).

■ We must conclude that this defendant did not demonstrate that he came within the knowledge exception of Section 77 *o.* This exception refers not to a particular transaction, but to the existence of the basic facts relating to the course of business of the corporation. The director need not have been involved in the particular transaction which became the subject of the litigation. *Myzel v. Fields,* 386 F.2d 718 (8th Cir.). Thus we must set aside the trial court's determination of the knowledge issue and conclude that this defendant is liable under the Act if the interests sold were securities.

*No. 83–1230*

■ In this appeal defendant William Rogers argues, as did the defendants at trial, that these interests were not intended to be regulated by the Securities Act of 1933. He so raises the "context" argument derived from the Act at 15 U.S.C. § 77b(1) wherein as to definitions it is provided:

"When used in this subchapter, unless the context otherwise requires—

(1) the term security means...."

It must be noted, as mentioned in 84–1228, that the undivided working interests in the producing property which was the subject of the sale was subject to an operating agreement wherein the seller would be the operator of the property as were the other interests sold and offered for sale. The parties agree that the transaction used interstate facilities; that the interests were not registered as securities; and that the interests were within the express provisions of the Act or require registration as a "fractional undivided interest in oil ... rights" or as an "investment contract," 15 U.S.C. § 77b(1).

The defendant, as mentioned, urged in the face of the language of the Act that its plain meaning should not be here applied because the context "otherwise requires," and the attributes usually associated with a security are not present. However, the only argument defendant makes on this point was that the transaction was between knowledgeable experienced parties in the oil business. This may be the nature of this particular sale but it is apparent that the offer went to all that read the newspapers. A somewhat similar argument was made in *Woodward v. Wright,* 266 F.2d 108 (10th Cir.), and in *Gilbert v. Nixon,* 429 F.2d 348 (10th Cir.).

In *Gilbert v. Nixon,* the fractional lease interests were securities; there were knowledgeable parties. However, the seller had a long-standing association with the buyers on other leases and it was a direct transaction and the court held that there was no public offering under 15 U.S.C. § 77d(2). In the case before us the interests were securities and there was a public offering. Defendant's argument as to knowledgeable parties is pitched to the context doctrine but it is really a part of a typical private offering argument.

■ The Supreme Court in *S.E.C. v. C.M. Joiner Leasing Corp.,* 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88, stated that oil and gas interests had been the subject of much speculation and the Act was intended to

cover the splitting of such interests "which had been most utilized for speculative purposes." This court used similar language in *Woodward v. Wright*, 266 F.2d 108 (10th Cir.), and in *Ballard & Cordell Corp. v. Zoller & Danneberg*, 544 F.2d 1059 (10th Cir.). We said in *Woodward v. Wright:*

"[A] fractional undivided interest in oil and gas becomes a 'security' when it is created out of the ownership of an interest in oil and gas or other mineral rights for the purpose of sale or offering for sale. Correlatively, the sale or offering for sale of an oil and gas lease, or an undivided interest therein, may be the sale of an 'investment contract', hence a security, when the transaction carries with it something more than the assignment of a 'naked leasehold right', as where the purchasers look entirely to the efforts of other persons to make their investment a profitable venture."

As to whether the interest was an "investment contract," 15 U.S.C. § 77b(1), the Supreme Court in *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244, and in *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621, considered the elements of such a contract. We also considered these factors in *Zabriskie v. Lewis*, 507 F.2d 546 (10th Cir.). In *Howey* the Court said an "investment contract" exists when "the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others."

It must be concluded that the fractional interest was not of a bare leasehold, and that it was connected to an operating agreement whereby the seller alone would use its efforts to produce the well and sell the production; that the interest was a security required to be registered under the Securities Act of 1933 and was sold at a public offering. Thus the corporation violated the Act, although there may not be a violation of state law, and the defendant William Rogers being a controlling person with the requisite knowledge was liable to

the plaintiff for the violation. The case is remanded to the trial court.

IT IS SO ORDERED.